**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Walt Disney Studios Motion Picture Production, *et al.*, Appellants | ) ) | Civil Action No. [          ] |
| v. | ) ) | |
| DDMG Estate, *et al.*, Appellees | ) ) ) | |
| In re | ) ) | Chapter 11 |
| DDMG Estate, *et al.*, | ) ) ) | Bankruptcy Case No.:  12-12568 (BLS) |
| Debtors. | ) ) | **Bankruptcy Doc. Ref. Nos. 721 and 736** |

**EMERGENCY MOTION OF THE DISNEY ENTITIES FOR STAY
PENDING APPEAL OF BANKRUPTCY COURT ORDER
(I) APPROVING SALE OF IN THREE PATENTS AND RELATED ASSETS
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND
OTHER INTERESTS, AND (II) GRANTING RELATED RELIEF**

# TABLE OF CONTENTS

<u>Page(s)</u>

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND; EMERGENCY HEARING ..........5

    A.   THE DISNEY ENTITIES' RIGHTS UNDER THE PRODUCTION
         AGREEMENTS.........................................................................................................6

    B.   THE PRESENT DISPUTE AND BASIS FOR THE APPEAL ..............................8

III. JURISDICTION, VENUE AND REQUESTED RELIEF ...............................................11

IV.  ARGUMENT...................................................................................................................11

    A.   There Is a Strong Likelihood That the Disney Entities Will Succeed on the
         Merits of the Appeal .................................................................................................13

    B.   The Disney Entities Will Suffer Irreparable Harm if the Stay Is Denied ..............18

    C.   The Potential Harm to the Disney Entities Outweighs the Minimal Harm,
         if any, to the Other Parties .......................................................................................21

    D.   The Public Interest in Protecting Patent Rights Supports Granting the Stay.........22

V.   NO BOND IS REQUIRED BECAUSE THE LIMITED STAY OF THE PATENT
    SALE ORDER HAS NO MATERIALLY ADVERSE FINANCIAL AFFECT ..............23

CONCLUSION...........................................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

ACC Bondholder Group v. Adelphia Commc'n. Corp. (In re Adelphia Commc'n. Corp.),
   361 B.R. 337 ..........................................................................................................23

In re Allegheny Health, Educ. & Research Found.,
   252 B.R. 309 (W.D. Pa. 1999) ..............................................................................13

Ams. United for Separation of Church & State v. City of Grand Rapids,
   922 F.2d 303 (6th Cir. 1990) .................................................................................22

AT&T Co. v. Winback & Conserve Program, Inc.,
   42 F.3d 1421 (3d Cir. 1994) ..................................................................................22

Matter of CADA Investments, Inc.,
   664 F.2d 1158 (9th Cir. 1981) ...............................................................................19

In re Charles & Lillian Brown's Hotel, Inc.,
   93 B.R. 49 (Bankr. S.D.N.Y. 1988) ................................................................17, 22

In re Chemtura Corp.,
   No. 09-11233 REG, 2010 WL 4638898 (Bankr. S.D.N.Y. Nov. 8, 2010) ............18

Cinicola v. Scharffenberger,
   248 F.3d 110 (3d Cir.2001) ...................................................................................19

Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC),
   391 B.R. 25 (B.A.P. 9th Cir. 2008) .......................................................................20

Commercial Radio Institute, Inc. v. W. Pa. Christian Broad. Co.,
   428 F. Supp. 1054 (W.D. Pa. 1977) .......................................................................21

Cont'l Oil Co. v. Frontier Ref. Co.,
   338 F.2d 780 (10th Cir. 1964) ...............................................................................23

In re Continental Airlines,
   91 F.3d 553 (3d Cir. Del. 1996) ............................................................................18

Evans v. Buchanan,
   435 F. Supp. 832 (D. Del. 1977) ...........................................................................13

First Fidelity Bank v. McAteer (In re McAteer),
   985 F.2d 114 (3d Cir. 1993) ..................................................................................14

Fox Sports Net West 2, LLC v. Los Angeles Dodgers LLC
(In re Los Angeles Dodgers LLC), 465 B.R. 18 (D. Del. 2011)..............................................20

In re Gen. Motors Corp.,
409 B.R. 24 (Bankr. S.D.N.Y. 2009)...................................................................................21

Goldstein v. Miller,
488 F. Supp. 156 (D. Md. 1980), aff'd, 649 F.2d 863 (4th Cir. 1981)....................................13

Haskell v. Goldman, Sachs & Co. (In re Genesis Health Ventures, Inc.),
367 B.R. 516 (Bankr. D. Del. 2007).............................................................13, 18, 21, 22

In re Highway Truck Drivers & Helpers Local Union #107,
888 F.2d 293 (3d Cir. 1989).............................................................................................11

Jac USA, Inc. v. Precision Coated Products, Inc.,
00 C 3780, 2003 WL 1627043 (N.D. Ill. Mar. 25, 2003)....................................................15

Jason Realty, L.P. v. First Fidelity Bank (In re Jason Realty, L.P.),
59 F.3d 423 (3d Cir. 1995)..............................................................................................14

Kahn v. Elwood,
232 F. Supp. 2d 344 (M.D. Pa. 2002)................................................................................13

In re Kerns,
111 B.R. 777 (S.D. Ind. 1990)..........................................................................................19

Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,
370 F.3d 1354 (Fed. Cir. 2004)........................................................................................15

New York Phonograph Co. v. Edison,
136 F. 600 (C.C.N.Y. 1905)............................................................................................15

Nordhoff Invs., Inc. v. Zenith Elec. Corp. (In re Zenith Elec. Corp.),
250 B.R. 207 (D. Del. 2000), aff'd, 258 F.3d 180 (3d Cir. 2001)............................11, 18, 23

In re Novon Int'l, Inc.,
2000 WL 432848 (W.D.N.Y. March 31, 2000)...................................................................15

Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v.
Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),
1992 U.S. Dist. LEXIS 3253 (D. Del. March 10, 1992).......................................................13

Pratt v. Wilcox Mfg. Co.,
64 F. 589 (C.C.N.D. Ill. 1893)..........................................................................................15

Republic of Philippines v. Westinghouse Elec. Corp.,
949 F.2d 653 (3d Cir. 1991)........................................................................................13, 21

In re Rickel Home Centers, Inc.,
  209 F.3d 291 (3d Cir. 2000)..................................................................................20

Sanofi, S.A. v. Med-Tech Veterinarian Products, Inc.,
  565 F.Supp. 931 (D.N.J. 1983) ............................................................................15

In re Spansion Inc.,
  2011 WL 3268084 (D. Del. July 28, 2011), aff'd 2012 WL 6634899 (3d. Cir.
  Dec. 21, 2012)........................................................................................................14

In re Sphere Holding Corp.,
  162 B.R. 639 (E.D.N.Y. 1994) ..............................................................................23

Spindelfabrik Suessen–Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer
  Maschinenfabrik Aktiengesellschaft, 829 F.2d 1075 (Fed. Cir. 1987)...................15

Syndia Corp. v. Lemelson Medical Education & Research Found.,
  165 F.Supp.2d 728 (N.D.Ill. 2001) ........................................................................15

TransCore, LP v. Elec. Transaction Consultants Corp.,
  563 F.3d 1271 (Fed. Cir. 2009)........................................................................14, 15

In re Trism, Inc.,
  328 F.3d 1003 (8th Cir. 2003) ...............................................................................20

Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.),
  652 F.2d 793 (9th Cir. 1981) .................................................................................18

Turner v. Rogers,
  131 S. Ct. 2507 (U.S.S.C. 2011)............................................................................12

U.S. Philips Corp. v. Int'l Trade Comm'n,
  424 F.3d 1179 (Fed. Cir. 2005)..............................................................................15

In re United Merchs. & Mfrs., Inc.,
  138 B.R. 426 (D. Del. 1992).......................................................................11, 22, 23

Weingarten Nostat, Inc. v. Serv. Merch. Co., Inc.,
  396 F.3d 737 (6th Cir. 2005) .................................................................................18

WiAV Solutions LLC v. Motorola, Inc.,
  631 F.3d 1257 (Fed. Cir. 2010)..............................................................................16

Willamette Water Front, Ltd. v. Victoria Station Inc. (In re Victoria Station, Inc.),
  88 B.R. 231 (9th Cir. BAP 1988), aff'd 875 F.2d 1380, 1383 n.1 (9th Cir. 1989)..................19

Williams v. Republic (In re Cujas),
  376 B.R. 480 (Bankr. E.D. Pa. 2007) .....................................................................20

## STATUTES AND RULES

11 U.S.C. 326(d) ...................................................................................................19

11 U.S.C. 363(m) .............................................................4, 5, 11, 12, 18, 19, 20

11 U.S.C. § 363(f) ..................................................................................1, 2, 12, 16

28 U.S.C. § 157 ....................................................................................................11

28 U.S.C. § 158(a)(1) ...........................................................................................10

28 U.S.C. § 1334 .............................................................................................10, 11

28 U.S.C. § 1338 ...................................................................................................11

28 U.S.C. §§ 1408 and 1409 ................................................................................10

Fed. R. Bankr. Proc. 805 ......................................................................................19

Fed. R. Bankr. Proc. 6004(h) ....................................................................6, 10, 23

Fed. R. Bankr. Proc. 8005 .............................................................1, 10, 11, 12, 22

Fed. R. Bankr. Proc. 9006(a)(1) ...........................................................................10

## OTHER AUTHORITIES

Walker on Patents § 19:22 ....................................................................................16

Walt Disney Studios Motion Picture Production ("**Disney Studios**") and certain of its affiliates (collectively, the "**Disney Entities**") hereby request on an emergency basis (the "**Motion**") pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") that this Court grant a stay pending appeal of the Order (I) Approving Sale of In Three Patents and Related Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and (II) Granting Related Relief [Bankr. D.I. 721] (the "**Patent Sale Order**"), entered on December 21, 2012 by the United Stated Bankruptcy Court for the District of Delaware in the above-captioned bankruptcy cases, which incorporates by reference and implements an informal "letter ruling" in the nature of an opinion that was issued by the bankruptcy court on December 10, 2012 [Bankr. D.I. 658] (the "**Disney Letter Ruling**").  True and correct copies of the Patent Sale Order and the Disney Letter Ruling are attached hereto as Exhibits A and B, respectively.  On December 28, 2012, the Disney Entities filed a timely notice of appeal of the Patent Sale Order [Bankr. D.I. 736], commencing the present appeal (the "**Appeal**").  A true and correct copy of the notice of appeal is attached hereto as Exhibit C.  The Disney Letter Ruling and Patent Sale Order overruled the Disney Entities' limited objections, sur-reply, and supplemental letter brief with respect to the bidding procedures for the Patent Sale and the substantive Patent Sale Motion (collectively, the "**Limited Objections**") [Bankr. D.I. 369, 519, 599, and 648].  True and correct copies of the Limited Objections are attached hereto as Exhibits D, E, F, and G, and are incorporated herein by reference.  In support of this Motion, the Disney Entities respectfully represent as follows:

## I.    PRELIMINARY STATEMENT

1.    The Appeal involves a conflict between the federal patent laws and Section 363(f) of the Bankruptcy Code which authorizes debtors to sell their assets during a bankruptcy case "free and clear" of claims, liens or interests of others.  The central question is whether a contract granting a covenant not to sue ("**CNTS**") and granting the right to a non-exclusive license  (the "**In Three Patent Rights**") to the Disney Entities (collectively, the "**Section 16 Rights**")

constituted a limitation on intellectual "property" owned by an original patent owner, such that Debtors' subsequent purchase of the patents from the original owner was limited by and subject to the Disney Entities' rights.  Under patent law, the answer is that subsequent sales of patents are subject to pre-existing licenses and other rights that had been granted by the patent owner, including any grant of a CNTS, which qualifies as a "license" under patent law.  Any buyer could therefore only sell the bundle of rights it had originally acquired; that is, any subsequent sale, such as the sale at issue here, would also necessarily be subject to the pre-existing licenses. However, the bankruptcy court below misinterpreted Section 363(f) as permitting a debtor/buyer of patents acquired after CNTS rights and license rights had been granted nevertheless to sell the patents "free and clear" of such rights.

2.       More specifically, Digital Domain Production, Inc., Digital Domain Group, and the other debtors (collectively, "**Debtors**")[1] were in the business, among other things, of contracting with movie studios, including the Disney Entities, to provide visual special effects for film projects.  In 2010, Debtors acquired certain intellectual property assets from In Three, Inc. ("**In Three**") related to the conversion of two dimensional ("**2D**") artwork for films to three dimensional ("**3D**") artwork (the "**In Three Patents**").  During the course of the Case (as defined below), Debtors initiated an auction process to sell the In Three Patents (the "**Patent Sale**").  The Disney Entities filed the Limited Objections to assure that any sale authorized by the bankruptcy court would remain subject to the rights that had been previously granted by In Three to the Disney Entities.

3.       The Patent Sale Order and the Disney Letter Ruling incorporated therein are internally inconsistent.  The bankruptcy court held that the Patent Sale is subject to certain licenses and film-specific rights set forth in several agreements between the Disney Entities and In Three, but not other licenses and rights also contained in those agreements.  The dispute at issue in this Appeal concerns the Disney Entities' rights as set forth in Section 16 of an April 18,

---

[1] Following the sale of Debtors' principal business pursuant to an auction sale process in September 2012 in the course of the bankruptcy case, Debtors retitled the case as "DDMG Estate."  For purposes of this Motion, the defined term "Debtors" includes the DDMG Estate.

2008 agreement relating to 3D special effects for a film called *G-Force* (the "**G-Force Agreement**"). First, Section 16(a) provided, *inter alia,* that In Three could not sue the Disney Entities or their affiliates for patent infringement based on any work done by third-party vendors for the Disney Entities on projects other than the *G-Force* film itself. Second, Section 16(b) granted the Disney Entities and its affiliates a right to a non-exclusive license that would allow the Disney Entities or their affiliates generally to practice the In Three Patents. Section 16(d) expressly provided that these Section 16 rights would survive expiration or termination of the G-Force Agreement, while Section 19 provided that these provisions would be binding upon successors or assigns of In Three. Nevertheless, the bankruptcy court erroneously concluded that the Section 16 Rights were merely contract rights requiring continuing privity, not grants of property rights, and thus they were not binding upon Debtors at the time Debtors acquired the In Three Patents. Based upon that erroneous conclusion, the bankruptcy court overruled the Disney Entities' Limited Objections and authorized the Patent Sale "free and clear" of the Section 16 Rights.

4.      The principle that debtors cannot sell assets they do not own is fundamental to bankruptcy law. The principle that patent licenses (including CNTS rights) are a form of intellectual property right is equally fundamental to patent law. All interests in patents -- whether by license, covenant, assignment, or sale -- are created pursuant to contract with the patent owner: there is no other way to convey an interest, whether partial or total, in such intangible property. In fact, Debtors both acquired their interests in the In Three Patents by means of an asset purchase agreement and will be conveying those interests to the new buyer by means of the pending sale agreement. Yet the Disney Letter Ruling and Patent Sale Order of the bankruptcy court effectively nullified the Section 16 Rights even though they were transferred by In Three before In Three sold its remaining rights in the In Three Patents to Debtors -- apparently on the grounds that the Section 16 Rights were mere contract rights under a contract to which only Debtors' predecessor, but not Debtors, was a party.

5.      The Disney Entities seek review of this conflict between patent law and bankruptcy law on the merits.  However, Section 363(m) of the Bankruptcy Code has been generally, but not universally, held to moot any appeal from an asset sale approved by a bankruptcy court.  Absent a stay pending appeal, the Disney Entities cannot be assured that this Court or the court of appeals will be able to resolve this important question as to whether Debtors' interests in patents they purchased are subject to and limited by pre-existing licenses, thereby requiring that any subsequent sale of such patents in bankruptcy remain subject to such pre-existing licenses.  Moreover, given the ruling below, the Disney Entities have no other remedies available for the potential loss of their Section 16 Rights, as the bankruptcy court held that those rights are only contractual obligations of In Three, so no proof of claim would lie against Debtors.  No effective remedy would be available to the Disney Entities as to In Three: In Three sold all of its assets to Debtors and disbursed the proceeds years ago.  The Disney Entities thus would suffer irreparable injury if they cannot have this issue heard and determined on appeal.

6.      As far as can be determined, this is an issue of first impression at the appellate level.  It is an important question of conflicting patent law and bankruptcy law principles that could evade review if an emergency stay pending this Appeal is not granted.  The Disney Entities believe the Appeal could be fully briefed, heard and determined within 60-90 days.  The Appeal will involve the interpretation of patent law, bankruptcy law, and one contract at issue. No disputed issues of fact are material to the determination.

7.      Just to be clear:  the Disney Entities would not oppose the closing of the In Three Patent Sale if they can be assured of an appellate determination on the merits of their Limited Objections without being barred by Section 363(m).  In other words, if RealD Inc. ("**RealD**"), the successful bidder at the sale and the authorized buyer under the Patent Sale Order, and the other parties wish to proceed to close the In Three Patent Sale, the stay order could allow the closing to occur, provided, however, that (i) the appellees would be precluded from asserting that the closing triggered Section 363(m), thereby mooting the Appeal on the merits of the Limited

Objection, and (ii) the Patent Sale remains subject to the Disney Entities' rights, including their Section 16 Rights.   Absent such assurances, however, a stay pending appeal is necessary to preserve the status quo and afford the Disney Entities a full appellate review on the merits.

8.      Significantly, the Patent Sale Order expressly provides that the Patent Sale is subject to any "rights that [the Disney Entities] may establish on appeal or remand," if any, defined therein as the "Additional Disney Rights," with buyer assuming the assumed liabilities "to the extent of any Additional Disney Rights" and taking title to the In Three Patents subject to the Additional Disney Rights.  Patent Sale Order ¶¶ 24, 30, 34.   Thus, the Patent Sale Order expressly contemplates that the Patent Sale will be subject to such "Additional Disney Rights" as may be determined on appeal (id. ¶ 24), which seems to contemplate just this outcome:  a Patent Sale closing that allows for an appeal on the merits of the Limited Objection.  However, the other parties refused to include further clarifying language that would assure the Disney Entities that the Appeal could not be dismissed under Section 363(m) if the Patent Sale closed.  This potential ambiguity -- and the irreparable injury risk thus posed for the Disney Entities -- necessitated this Emergency Motion for a stay pending appeal.

## II.      FACTUAL AND PROCEDURAL BACKGROUND; EMERGENCY HEARING

9.      On September 11, 2012 (the "**Petition Date**"), Debtors filed their voluntary petitions for relief (collectively, the "**Case**") under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

10.      Pursuant to their Motion for Order (I) Approving Separate Sales of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief [Bankr. D.I. 291, filed Oct. 16, 2012] (the "**Patent Sale Motion**"), Debtors requested authority to sell, among other things, the In Three Patents in a separate sale free and clear or liens, claims, or interests to a buyer who was not then identified (the "**Patent Buyer**").  As now set forth in the Patent Sale Order, the Patent Buyer is RealD, the successful bidder at an auction held on December 14 for the In Three Patents.

11.     The Patent Sale has not yet closed, as the 14-day stay pursuant to Bankruptcy Rule 6004(h) remains in effect through Friday, January 4, 2013.  Because of the imminent expiration of the Rule 6004(h) stay, the Disney Entities respectfully request an emergency telephonic hearing on Friday, January 4.  If the Court believes that more time is necessary to consider the Motion, the Disney Entities request the entry of a scheduling order extending the Rule 6004(h) stay for an additional week and setting a telephonic hearing on or before Friday, January 11.

### A.     THE DISNEY ENTITIES' RIGHTS UNDER THE PRODUCTION AGREEMENTS

12.     The Disney Entities are parties to a number of agreements with Debtors or In Three as their predecessor in interest that are potentially affected by the Patent Sale, including, the G-Force Agreement.  The issues raised in the Limited Objection as to production agreements for various films, such as *Alice in Wonderland* (collectively, the "**Production Agreements**" as defined in the Limited Objection) were resolved by the Disney Letter Ruling which provided for the Patent Sale to be subject to the limited license and CNTS rights set forth in those agreements.[2]

13.     Section 7(b) of the G-Force Agreement, section 6(b) of the Alice in Wonderland agreement, and corresponding provisions of other Production Agreements all grant non-exclusive, fully paid, royalty-free, film-specific licenses to the Disney Entities to use all or any portion of the intellectual property of In Three or DDP that has been incorporated into the "Work," for the purpose of distributing, displaying, making derivative works of the incorporated intellectual property, or otherwise exploiting the Films (collectively, the "**Limited Licenses**").  The "Work," a capitalized, defined term in each agreement, refers to the "results and proceeds" of In Three or DDP's services for the Films.

---

[2] The Production Agreements all contain confidentiality clauses and certain confidential commercially sensitive information, and therefore are not attached to this Motion.  Debtors should already have copies of the Production Agreements, but the Disney Entities are willing to submit the Production Agreements under seal, at the appropriate time, if requested to do so.

14.     Section 7(a) of the G-Force Agreement, section 6(a) of the Alice in Wonderland Agreement, and corresponding provisions of other Production Agreements also include substantially similar covenants by In Three or DDP not to "challenge, through the courts, administrative governmental bodies, private organizations, or in any other manner the rights of [Disney] to exploit the Work by any means whatsoever" or "thwart, hinder or subvert the intent of the grants and conveyances to [Disney] herein and/or the collection by [Disney] of any proceeds relating to the rights conveyed hereunder" (collectively, the "**Film-Specific CNTS Rights**").

15.     In addition to the Film-Specific CNTS Rights granted with respect to the *G-Force film*, the G-Force Agreement *also* includes a separate section, Section 16, specifically entitled "Covenant Not to Sue." Section 16 is the critical provision at issue in this Appeal. It includes four key provisions.

16.     *First*, Section 16(a) provides a general covenant by In Three not to sue the Disney Entities with respect to any "work" (a lower-case general not limited to the *G-Force* film) for the Disney Entities by third party vendors (the "**General CNTS Rights**"), as follows:

> [In Three and its affiliates] will not pursue any claim or cause of action or otherwise assert any Company IP . . . against [Disney,] its Affiliates or any other respective customers, agents and distributors (collectively the "Producer Parties") based on work for any of the Producer Parties by a third party vendor. Such agreement does not restrict [In Three and its affiliates'] right to pursue a claim or cause of action against a third party for services performed by such third party for the Producer Parties; however, [In Three and its affiliates] agree that that will not pursue any claim or cause of action or otherwise assert any Company IP against such third party entity which might interrupt such third party entity's services to or on behalf of the Producer Parties.

(emphasis supplied). "Company IP" is defined in the G-Force Agreement to include the In Three Patents. Section 16(a) therefore protects the Disney Entities from being sued by the owner of the In Three Patents based upon conduct of third party vendors engaged in "work" for the Disney Entities, if the owner of the In Three Patents believes those third parties have infringed on the In Three Patents. Section 16(a) also provides protection from interference with any such "work," to

allow it to be completed (*i.e.,* not enjoined) while otherwise permitting enforcement actions against the third party vendors.

17.     *Second*, in addition to the Limited License set forth in Section 7(b) with respect to the *G-Force* film, Section 16(b) of the G-Force Agreement *also* confers upon the Disney Entities the In Three Patent Rights, *i.e.,* the right to an unlimited, non-exclusive, perpetual worldwide license to use the In Three Patents in exchange for a fee to be negotiated between the parties in good faith on a most-favored-nation basis. In Three or its successor was required to grant a license (the "**In Three Patent License**") within thirty days of a request by the Disney Entities for the In Three Patent License.

18.     *Third,* Section 16(c) specifies that, for purposes of Section 16, the "Company IP" at issue is defined to include not only the patents owned or controlled by In Three as of the effective date of the G-Force Agreement, *but also those acquired "at any time in the future"* that "relate to or are otherwise associated with the creation, capture, development, distribution, editing, production or display of a motion picture, television show, animation, or other entertainment image or depiction of any kind or nature, in any form of medium."

19.     *Fourth*, Section 16(d) expressly provides that Section 16 "shall survive the expiration or termination" of the G-Force Agreement. This binding effect is underscored by Section 19 which provides that the G-Force Agreement "shall be binding upon … successors and assigns."

## B.     THE PRESENT DISPUTE AND BASIS FOR THE APPEAL

20.     As set forth in greater detail in the Limited Objections, the Disney Entities contended that the Patent Sale must be expressly made subject to their Limited Licenses, the Film-Specific CNTS Rights, the General CNTS Rights, and the In Three Patent Rights. Debtors responded by contending that their prepetition acquisition of the In Three Patents was "free and clear" of the Disney Entities' rights and that Debtors were not successors to, nor bound by, In Three's obligations under the G-Force and other Production Agreements.

21.     The bankruptcy court issued the informal Disney Letter Ruling on December 10.
The Disney Letter Ruling upheld the Limited Licenses, preserving the Disney Entities' licenses
to use the In Three Patents as they pertain to the specific Films.  Disney Letter Ruling at 3.
However, the bankruptcy court found that the In Three Patent License had not been granted
prepetition and held that the Patent Sale would not be subject to the In Three Patent Rights.  Id.
at 4.  In the section on page 5 of the Disney Letter Ruling titled "Section 16(a) - Covenant Not to
Sue" (the "**CNTS Ruling**"), the bankruptcy court also upheld the Film-Specific CNTS Rights
while apparently denying the General CNTS Rights.  The last two sentences of that section
provide that:

> [T]he CNTS here pertains only to a limited license granted by In Three to Disney and the
> CNTS itself is limited, *i.e.*, Disney could still be sued by In Three.  Therefore, the Court
> holds that Disney does not have a general license by way of the CNTS; however, the
> Court does find that the sale is subject to the CNTS rights for the two specified films.

Id. at 5.  In a letter request for reconsideration filed on December 11 [Bankr. D.I. 663] (the
"**Reconsideration Request**"), the Disney Entities pointed out that (i) Sections 7(a) and 16(a)
provide for two *different* sets of CNTS rights:  the Film-Specific CNTS Rights relating to the
"Work," *i.e.*, the *G-Force* film, and the General CNTS Rights relating to other "work," and (ii)
Sections 16(a) and 16(b) provide for two *different* types of licenses *not* limited to *G-Force*:
Section 16(a) provides the General CNTS Rights not to be sued for alleged infringements by a
third party vendor working on projects for the Disney Entities or their affiliates, and Section
16(b) provides the In Three Rights to a nonexclusive license that would enable the Disney
Entities or their affiliates to use the In Three Patents themselves.  The Disney Letter Ruling
offered no justification for upholding the Film-Specific CNTS Rights while denying the General
CNTS Rights, other than an apparent conflation of the two different sets of rights set forth in
Sections 16(a) and (b).  The Disney Entities asked the bankruptcy court to clarify its ruling and
preserve the General CNTS Rights.  A true and correct copy of the Reconsideration Request is
attached hereto as Exhibit H, and is incorporated by reference.  At the second hearing held on the
Sale Motion on December 17 (the "**Second Sale Hearing**"), the bankruptcy court denied the

Reconsideration Request and restated its ruling that the Patent Sale would be subject to the Limited Licenses and Film-Specific CNTS Rights, but that it would not be subject to the In Three Patent Rights, the In Three Patent License, nor the General CNTS Rights.  Tr. of Second Sale Hearing at 20, ll. 4-8.  A true and correct copy of the transcript of the Second Sale Hearing is attached hereto as Exhibit I.

22.    After negotiation among the parties regarding language specific to the Disney Entities' rights, the bankruptcy court entered the Patent Sale Order on December 21.  In addition to incorporating the Disney Letter Ruling making the Patent Sale subject to the Limited Licenses and the Film-Specific CNTS Rights (Patent Sale Order ¶ 42), the Patent Sale Order expressly provides that the Patent Sale is also subject to any "rights that [the Disney Entities] may establish on appeal or remand," if any, defined therein as the "Additional Disney Rights," with Patent Buyer assuming the assumed liabilities "to the extent of any Additional Disney Rights" and taking title to the In Three Patents subject to the Additional Disney Rights. Id. ¶¶ 24, 30, 34.  The Patent Sale Order further anticipates this Appeal by memorializing a stipulation between Debtors and Patent Buyer regarding cooperation and contribution for costs to defend the Appeal. Id. ¶43.

23.    The bankruptcy court denied Debtors' request for a waiver of the 14-day stay of the Patent Sale Order's effectiveness under Bankruptcy Rule 6004(h).  That 14-day stay is in effect through January 4, 2013.  Therefore, absent entry of an order by this Court granting a stay pending this Appeal entered on or before Friday, January 4, 2013, the Patent Sale Order will become effective on January 5, 2013.  Id. ¶ 37; see Fed. R. Bankr. Proc. 9006(a)(1).  At the Second Sale Hearing, the Disney Entities orally requested an extended stay pending appeal, but that motion was not granted. Ex. I, Tr. of Second Sale Hearing at 20, ll. 4-8.

### III.  JURISDICTION, VENUE AND REQUESTED RELIEF

24.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 158(a)(1) and

1334 and Rule 8005 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

Venue is proper under 28 U.S.C. §§ 1408 and 1409.

25.     The Disney Entities respectfully request that this Court enter an order staying the

effectiveness of the Patent Sale Order pending resolution of the Appeal or, alternatively, an order

ruling that a stay pending appeal is not necessary to prevent the Appeal from becoming moot

pursuant to Section 363(m), because the Patent Sale Order already provides that the Patent Sale

is subject to such Additional Disney Rights as may be established on the merits.

### IV.  ARGUMENT

26.     Bankruptcy Rule 8005 provides that a district court can protect the status quo and

the rights of the parties while an appeal of a bankruptcy court's order is pending:

> Subject to the power of the district court . . . reserved hereinafter, the bankruptcy
> judge may suspend or order the continuation of other proceedings in the case
> under the Code or make any other appropriate order during the pendency of an
> appeal on such terms as will protect the rights of all parties in interest. A motion
> for such relief . . . may be made to the district court . . . but the motion shall show
> why the relief . . . was not obtained from the bankruptcy judge.

Bankruptcy Rule 8005; see also Nordhoff Invs., Inc. v. Zenith Elec. Corp. (In re Zenith Elec.

Corp.), 250 B.R. 207, 214-15 (D. Del. 2000) ("Zenith I"), aff'd, 258 F.3d 180 (3d Cir. 2001)

("Zenith II"). The Third Circuit has recognized that "a myriad of circumstances can occur that

would necessitate the grant of a stay pending appeal in order to preserve a party's position." In

re Highway Truck Drivers & Helpers Local Union #107, 888 F.2d 293, 298 (3d Cir. 1989). The

granting of a motion for a stay pending appeal is commended to the court's sound discretion. In

re United Merchs. & Mfrs., Inc., 138 B.R. 426, 430 (D. Del. 1992).

27.     Here, preservation of the status quo is especially important to assure that the

merits of the appeal can be considered by the federal courts of general jurisdiction -- the district

court and the court of appeals -- which can properly hear and determine the issues relating to the

conflict between the federal patent laws and the bankruptcy laws.  Because this issue arises in the context of a sale of assets in a bankruptcy case, which is a core matter under 28 U.S.C. § 157 and thus within the bankruptcy jurisdiction of the federal courts pursuant to 28 U.S.C. § 1334, rather than patent jurisdiction arising under 28 U.S.C. § 1338, this conflict can only reach the federal courts of general jurisdiction by means of appeal.  Denying review on the merits would thus result in a situation where the issue of whether pre-existing patent licenses can be nullified pursuant to Section 363(f) of the Bankruptcy Code would be likely to evade review by these courts.  Although constitutional principles of mootness must give way to the importance of reaching questions that would otherwise evade appellate review (see, e.g., Turner v. Rogers, 131 S. Ct. 2507, 2514-15 (U.S.S.C. 2011) (holding appeal is not moot under constitutional mootness principles because courts can decline to dismiss a case for mootness when the challenged conduct is "capable of repetition" while "evading review")), whether that principle overrides the statutory mootness provision of Section 363(m) of the Bankruptcy Code is highly uncertain.  The Disney Entities should not have to bear that risk, which is why a stay pending appeal is appropriate.

28.   The Motion has been made in this Court for two reasons:  (i) the bankruptcy court previously denied the Disney Entities' oral motion for an extended stay (Ex. I, Tr. of Second Sale Hearing, p. 21, ll. 17-19), and (ii) the requested relief could not be obtained on further written motion before the bankruptcy court prior to the Patent Sale Order becoming effective. Bankruptcy Judge Shannon left for vacation on December 21, 2012, the day the Sale Order was entered, and will not return until January 7, 2013.  Thus, the bankruptcy judge manually crossed out any reference to the denial of the oral motion from the Patent Sale Order, apparently so that this Court could hear and determine a fully briefed motion for stay pending appeal due to his unavailability to hear such a motion before the temporary stay expires.  Ex. I, Tr. of Second Sale Hearing, p. 23, ll. 9-11.   Under the circumstances, this Court is the appropriate forum for the Motion.

29.    In determining whether a stay of proceedings pending appeal is warranted under Rule 8005, courts in the Third Circuit apply a four-part test:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Haskell v. Goldman, Sachs & Co. (In re Genesis Health Ventures, Inc.), 367 B.R. 516, 519 (Bankr. D. Del. 2007) (quoting Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991)).  A court must balance all four elements, as no single factor is outcome determinative.  In re Genesis Health Ventures, 367 B.R. at 519; see also In re Allegheny Health, Educ. & Research Found., 252 B.R. 309, 321-32 (W.D. Pa. 1999).

### A.    There Is a Strong Likelihood That the Disney Entities Will Succeed on the Merits of the Appeal

30.    To satisfy the "likelihood of success" factor in obtaining a stay pending appeal, the Disney Entities need not convince the Court to "develop serious doubts concerning the correctness of [the bankruptcy court's] decision."  See Goldstein v. Miller, 488 F. Supp. 156, 172-73 (D. Md. 1980), aff'd, 649 F.2d 863 (4th Cir. 1981).  The likelihood of success on the merits generally has been interpreted to mean simply that a movant has a "substantial case, or a strong case on appeal."  Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.), 1992 U.S. Dist. LEXIS 3253, at *4 (D. Del. March 10, 1992).  Courts should not take the "likelihood of success" test too literally; a court need not find error to grant a stay.  Evans v. Buchanan, 435 F. Supp. 832, 843-844 (D. Del. 1977).  Further, a court may properly stay proceedings when the lower court has ruled on a difficult legal question and the equities of the case suggest that the status quo should be maintained.  See Goldstein, 488 F. Supp. at 172-73; see also Evans, 435 F. Supp. at 844 (stay may be appropriate, and fourth factor satisfied, where appeal raises serious and difficult questions of law and threat of irreparable injury to applicant is immediate and

substantial). "Simply stated, more of one [irreparable injury] excuses less of the other [probability of success]." *Kahn v. Elwood*, 232 F. Supp. 2d 344, 349-50 (M.D. Pa. 2002).

31.     It is axiomatic that In Three could only assign and transfer to Debtors what interests and rights In Three had at the time of the prepetition sale. Outside of bankruptcy, the same would also be true for any subsequent transfer by Debtors as In Three's assignee. The filing of a bankruptcy petition does not create or confer on debtors any property rights beyond what they own as of the petition date under applicable nonbankruptcy law. *See, e.g.*, Jason Realty, L.P. v. First Fidelity Bank (In re Jason Realty, L.P.), 59 F.3d 423, 429 (3d Cir. 1995) (title to rents used as cash collateral had transferred to lender prepetition pursuant to applicable state law and thus were not property of the estate); First Fidelity Bank v. McAteer (In re McAteer), 985 F.2d 114 (3d Cir. 1993) (life insurance proceeds payable upon debtor's death were not property of the estate, but rather belonged to beneficiary).

32.     The General CNTS Rights provided by In Three to the Disney Entities and their affiliates under the terms of Section 16(a) of the G-Force Agreement were unconditionally granted at the time of its execution -- before Debtors had acquired any interest in the In Three Patents.[3]  Read together, Sections 16(a) (granting the General CNTS Rights), 16(b) (granting the In Three Patent Rights), 16(d) (providing that this paragraph survives the expiration or termination of the G-Force Agreement), and 19 (providing that the G-Force Agreement is binding on successors and assigns), compel the conclusion that In Three and the Disney Entities intended the General CNTS Rights and the In Three Patent Rights to transfer with the In Three Patents to subsequent owners of the patents.

33.     It should be noted that, pursuant to applicable patent law, the CNTS rights are the equivalent of non-exclusive licenses and are entitled to the same protections. See TransCore, LP

---

[3]  The In Three Patent Rights set forth in Section 16(b) of the G-Force Agreement were also conveyed prepetition to the Disney Entities, and thus Debtors acquired their title to the In Three Patents *subject to* the In Three Patent Rights. The issues involved with respect to that provision are more complicated than the General CNTS Rights issues. Rather than previewing the merits on those issues, which are set forth in detail in the Limited Objections, for purposes of this Motion the likelihood that the Disney Entities will prevail on the General CNTS Rights issue is sufficient justification for granting the stay pending appeal.

v. Elec. Transaction Consultants Corp., 563 F.3d 1271, 1275 (Fed. Cir. 2009) (holding that "a nonexclusive patent license is equivalent to a covenant not to sue."); In re Spansion Inc., 2011 WL 3268084 (D. Del. July 28, 2011), aff'd 2012 WL 6634899 (3d. Cir. Dec. 21, 2012) (holding that a covenant not to sue is equivalent to a non-exclusive license). Because a patent is not an affirmative right to make, use, or sell anything, but instead a limited right to exclude others from making, using or selling the thing patented, "a patent license agreement is in essence nothing more than a promise by the licensor not to sue the licensee." TransCore, 563 F.3d at 1275 (quoting Spindelfabrik Suessen–Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft, 829 F.2d 1075, 1081 (Fed. Cir. 1987)); see also U.S. Philips Corp. v. Int'l Trade Comm'n, 424 F.3d 1179, 1189 (Fed. Cir. 2005) ("A nonexclusive patent license is simply a promise not to sue for infringement."); Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir. 2004) ("This license is, in essence, a licensor's covenant not to sue the licensee.").

34.     It is a well-established principle of patent law that pre-existing licenses are binding upon successors in interest and subsequent exclusive licensees. See generally Jac USA, Inc. v. Precision Coated Products, Inc., 00 C 3780, 2003 WL 1627043 (N.D. Ill. Mar. 25, 2003) ("[T]he purchaser of a patent takes subject to outstanding licenses") (quoting Sanofi, S.A. v. Med-Tech Veterinarian Products, Inc., 565 F.Supp. 931, 939 (D.N.J. 1983); Syndia Corp. v. Lemelson Medical Education & Research Found., 165 F.Supp.2d 728, 753 (N.D.Ill. 2001) (where two licenses conflict, the first prevails, even though the taker of the second has an exclusive license and the right to enforce the patent, and had no notice of the existence of the first license); New York Phonograph Co. v. Edison, 136 F. 600, 606 (C.C.N.Y. 1905) (holding that in patent sales, "the doctrine is well established that a license follows the assets of the licensor into the possession of him who buys [the patents] with his eyes open to the pre-existing contractual relations and existing equities.); Pratt v. Wilcox Mfg. Co., 64 F. 589, 590 (C.C.N.D. Ill. 1893) (successor corporation by merger took patents of predecessor corporation subject to existing licenses). Under applicable patent law, the rights of an "exclusive" licensee (and by

extension, an assignee) to use and enforce patents are only as broad as what the grantor has the right and power to provide.

35.     A patent purchaser or exclusive licensee cannot invalidate rights of third parties simply by refusing expressly to assume or recognize such rights, as Debtors are trying to do here. Applicable patent law holds that the licensee or assignee of a patent takes subject to license rights in existing agreements, whether or not it affirmatively assumes them. See In re Novon Int'l, Inc., 2000 WL 432848, at *5, *10-11 (W.D.N.Y. March 31, 2000) (noting that "the assignee of a patent . . . 'takes subject to the legal consequences of the patentee's previous acts,' and subject to the licenses previously granted by assignor.'" (quoting WALKER ON PATENTS § 19:22) and holding that bankruptcy trustee's assignment of patents "free and clear" must still comply with applicable non-bankruptcy law, and where the estate reserved to itself the rights and obligations of previously granted licenses, the assigned patents were still subject to such licenses).

36.     The In Three Patent Rights granted by Section 16(b) are also binding Debtors as In Three's assigns, pursuant to Sections 16(d) and 19.  If a party has a preexisting ability to obtain a license from another party with the right to grant it, even if such right is to be exercised in the future, an "exclusive" licensee/assignee is subject to those rights and does not have authority to exclude the third party's license in the patent. See WiAV Solutions LLC v. Motorola, Inc., 631 F.3d 1257, 1266-67 (Fed. Cir. 2010) (holding that exclusive patent licensee's standing to assert its rights against an alleged infringer are subject to both (i) rights in existence at the time of the license and (ii) licenses that may be granted in future to parties that have pre-existing rights to obtain them).  As a matter of federal patent law, the transfer of the In Three Patents remained subject to the General CNTS Rights and the In Three Patent Rights even after the closing on that sale, because In Three could not convey a greater interest in the In Three Patents than what it held at the time of the In Three APA – regardless of any representations it may have made to Debtors in connection with that transaction.

37.     These patent principles stand for the proposition that patent owners, such as Debtors, are bound by prior grants of rights with respect to CNTS and licenses, which effectively limit the intellectual "property" that they own and, thus the intellectual "property" that they can sell during a bankruptcy case. As contractually created "property" rights enforceable under patent law, patent licenses potentially conflict with the goal of Section 363(f) of the Bankruptcy Code -- to sell debtor's assets "free and clear" of claims, liens or interests. This presents the question of whether patent licenses or rights, constituting "property" rights that would ordinarily be binding on a patent purchaser can be stripped off in a bankruptcy sale. This Court must decide which legal principle should prevail: (i) the nonbankruptcy law that establishes the nature and extent of a debtor's property rights, or (ii) the power of the bankruptcy court to apply bankruptcy notions of contract law to eliminate patent licenses as if they are "claims, liens or interests" (instead of the limitations on the "property" owned by the debtor in the first place) and thereby pass clean title to a bankruptcy buyer. Consistent with the fundamental premise of the Bankruptcy Code -- that debtors' property rights are established by nonbankruptcy law -- the patent law concepts of license rights as limiting a patent owner's "property" rights should prevail.

38.     For purposes of assessing the likelihood that the Disney Entities will prevail on appeal, it is especially noteworthy that the bankruptcy court offered no principled explanation as to why, on the one hand, the Section 7(a) Film-Specific CNTS Rights were entitled to preservation in the Patent Sale Order as limitations on the scope of rights acquired by Debtors from In Three in the prepetition sale, but, on the other hand, the Section 16(a) General CNTS Rights were not. The only difference between these two sections is that the Section 16(a) grant of the General CNTS Rights applies to any "work" done by third-party vendors, whereas the Section 7(a) grant of Film-Specific CNTS Rights applies only to the "Work" being done on the *G-Force* film. Similarly, the Section 7(b) Limited License Rights with respect to the *G-Force* film are preserved, but not the Section 16(b) In Three Patent Rights with respect to the general

nonexclusive In Three Patent License.  Based upon the foregoing analysis, the Disney Entities have sufficiently established the likelihood that they will prevail on the merits of the Appeal for purposes of this Motion.

**B.      The Disney Entities Will Suffer Irreparable Harm if the Stay Is Denied**

39.      In considering the request for a stay pending appeal, the Court must consider "the critical role a stay pending appeal plays, not only in maintaining the status quo, but in preserving the right to a review on the merits." In re Charles & Lillian Brown's Hotel, Inc., 93 B.R. 49, 53 (Bankr. S.D.N.Y. 1988) (superseded by rule on other grounds as stated in In re Chemtura Corp., No. 09-11233 REG, 2010 WL 4638898 (Bankr. S.D.N.Y. Nov. 8, 2010); see also Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.), 652 F.2d 793, 798 (9th Cir. 1981) ("If an appellant fails to obtain a stay after exhausting all appropriate remedies, that well may be the end of his appeal. . . . For this reason there is a concomitant obligation on the courts to consider such stay application thoroughly and with full appreciation of the consequences of a denial.").

40.      Here, the second prong of In re Genesis Health Ventures, 367 B.R. at 519, is satisfied because the Disney Entities may be irreparably harmed if a stay is not granted.  Without a stay, Debtors and the Patent Buyer can be expected to close on the Patent Sale "free and clear" of the General CNTS Rights and the In Three Patent Rights, and then argue that effective relief is unavailable and that the Appeal is moot pursuant to Section 363(m).  See Zenith II, 258 F.3d at 185-86; In re Continental Airlines, 91 F.3d 553, 560-561 (3d Cir. Del. 1996).  If the appeal on the merits is moot, then pursuant to the Patent Sale Order, the Disney Entities will lose their General CNTS Rights and In Three Patent Rights without any further recourse.

41.      This risk of mootness is a sufficient basis to grant the requested stay.  Bankruptcy Code § 363(m) provides in full:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

The Bankruptcy Code's specific statutory language on mootness is generally held to be more restrictive than the constitutional doctrine of mootness, which would ask only if an effective remedy could be fashioned after appeal to determine the propriety of a stay. Weingarten Nostat, Inc. v. Serv. Merch. Co., Inc., 396 F.3d 737, 742 (6th Cir. 2005). Although most circuits have adopted a per se rule that appeals subject to Section 363(m) are moot unless the appellant obtains a stay pending appeal, the Third Circuit's test for mootness has an exception: the appellant does not have to obtain a stay if "a reversal or modification of the authorization to sell would [not] affect the validity of the sale." Cinicola v. Scharffenberger, 248 F.3d 110, 128 (3d Cir.2001).

42.    The Disney Entities believe that the specific terms of the Patent Sale Order bring this Appeal within the Cinicola exception. The Patent Sale Order expressly makes the Patent Sale subject to and bound by the outcome of the Appeal. Under these unusual circumstances, the outcome of the Appeal cannot affect the fundamental validity of the sale, and thus mootness is not an issue. See Matter of CADA Investments, Inc., 664 F.2d 1158, 1160 (9th Cir. 1981). CADA was decided under former Bankruptcy Rule 805 (the predecessor to Section 363(m)) and involved two sales of the same real property. At issue was the validity of the second sale, which had been made expressly subject to the first buyer's appeal of an order setting aside the first sale. Id. at 1160. Because the interest the second buyer purchased was thus expressly conditioned on the outcome of the first buyer's appeal, a reversal or modification of the appealed order setting aside the first sale would not "affect" the sale to the second buyer, and so the appeal was not moot. Id.; see also Willamette Water Front, Ltd. v. Victoria Station Inc. (In re Victoria Station, Inc.), 88 B.R. 231 (9th Cir. BAP 1988) (citing CADA, and holding that appeal of assignment of lease was not moot for failure to obtain stay when assignment was conditioned on outcome of appeal) (aff'd 875 F.2d 1380, 1383 n.1 (9th Cir. 1989)); In re Kerns, 111 B.R. 777 (S.D. Ind. 1990) (citing CADA; when sale agreement between seller and purchaser made pursuant to 11 U.S.C. 326(d) specifically contemplates reversal of sale on appeal, appeal not moot for failure to obtain stay). In exactly the same manner, the plain language of the Patent Sale Order shows that the parties stipulated that the rights transferred to the Patent Buyer would be subject to such

Additional Disney Rights as may be established on appeal.  The Patent Sale Order expressly

provides that the Patent Sale is subject to any "rights that [the Disney Entities] may establish on

appeal or remand," with Patent Buyer assuming the assumed liabilities "to the extent of any

Additional Disney Rights" and taking title to the In Three Patents subject to the Additional

Disney Rights.  Patent Sale Order ¶¶ 24, 30, 34.  Under the exception for mootness in the

controlling <u>Cinicola</u> decision, this is sufficient evidence of agreement among the parties that

"reversal or modification" of the Patent Sale Order on appeal would not affect the validity of the

Patent Sale, only the scope of the Patent Buyer's rights.[4]

43.     Nor would a ruling on this Appeal in favor of the Disney Entities affect the

validity of the Patent Sale by depriving Debtors or the Patent Buyer of the benefit of their

bargain.[5]  Given that Debtors and the Patent Buyer expressly stipulated to make the Patent Sale

subject to the Additional Disney Rights, which are currently indeterminate, they have assumed

the risks of the Appeal – and in Patent Sale Order ¶43, the parties to the sale expressly

contemplate the Appeal and allocate the costs and risks of the Appeal between them.

44.     Although the Disney Entities do not concede or believe that closing the Patent

Sale will render their Appeal moot, the uncertainty of how the appellate courts in this circuit may

apply the mootness principles of Section 363(m) places the Disney Entities at the risk of

irreparable injury if a stay pending appeal is not granted, as they may be denied their right of

---

[4] It is also worth noting Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 35 (B.A.P. 9th Cir. 2008).  That case held that Section 363(m) did not moot an appeal of a real property sale to the extent the appeal sought to challenge the "free and clear" aspect of the sale and not the transfer of title itself, absent proof that the junior lien in question could have been stripped under state foreclosure law.  The opinion has been much criticized because the underlying premise about applicable state law was erroneous: although not briefed by the trustee in that case, the applicable state foreclosure laws do in fact permit sales by senior lenders free and clear of junior liens.  Here, however, the principle would apply:  applicable nonbankruptcy patent law does not allow a sale of patents "free and clear" of pre-existing licenses, and therefore this Appeal should not be moot as a matter of law, in addition to pursuant to the express terms of the Patent Sale Order.

[5] Other cases dismissing appeals for mootness based upon consideration of this "impact" question are distinguishable on their facts.  See In re Rickel Home Centers, Inc., 209 F.3d 291, 306 (3d Cir. 2000) (appeal that would limit purchaser's ability to sublease assigned lease would "seriously affect" the value of the lease and so appeal would impact validity of the sale);  In re Trism, Inc., 328 F.3d 1003, 1007 (8th Cir. 2003) (articulating mootness test as whether "the provision is so closely linked to the agreement governing the sale that modifying or reversing the provision would adversely alter the parties' bargained-for exchange").

substantive appellate review absent a stay.  Courts recognize where, like here, "the denial of a stay pending appeal *risks* mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied."  Fox Sports Net West 2, LLC v. Los Angeles Dodgers LLC (In re Los Angeles Dodgers LLC), 465 B.R. 18, 36 (D. Del. 2011) (finding risk of equitable mootness supported issuance of stay) (quoting Williams v. Republic (In re Cujas), 376 B.R. 480, 487 (Bankr. E.D. Pa. 2007)) (emphasis added).  As the Third Circuit has stated, "[c]ertainly, the fact that the decision on the stay may be dispositive of the appeal in some cases is a factor that an appellate court must consider" in determining whether irreparable harm will result from the denial of a stay.  Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991).  Absent a stay, the Disney Entities face an imminent danger of being bound by an asset sale transaction constructed with the plain intent to strip them of their rights in the In Three Patents, without an opportunity to obtain an appellate court's review of the underlying decision and conclusions of patent law.

45.     Finally, should the bankruptcy court's rulings stand without a meaningful opportunity for appellate review, the Disney Entities will suffer ongoing harm – the risk of being sued on account of alleged acts of infringement committee by third-party vendors on future film projects and of being denied the right to practice the In Three Patents themselves – in an amount that is impossible to ascertain currently.  A party is irreparably harmed where damages are impossible to ascertain such that there is no other way short of a stay to maintain the status quo. See Commercial Radio Institute, Inc. v. W. Pa. Christian Broad. Co., 428 F. Supp. 1054, 1057 (W.D. Pa. 1977).

### C.     The Potential Harm to the Disney Entities Outweighs the Minimal Harm, if any, to the Other Parties

46.     The third prong of In re Genesis Health Ventures, 367 B.R. at 519, weighs in favor of a stay.  In contrast to the potential irreparable harm faced by the Disney Entities, Debtors, the Patent Buyer, and DIP Lenders will suffer no permanent harm if this Court grants the limited stay requested herein. The Disney Entities will seek to expedite the Appeal.  The

short delay in the event the Patent Sale cannot close immediately will not materially harm the Debtors' estates. See In re Gen. Motors Corp., 409 B.R. 24, 33 (Bankr. S.D.N.Y. 2009) (recognizing the line of "[c]ases expressing a willingness to grant a brief stay pending expedited appeal" as establishing a sound reason for granting such stay, where the stay does nothing more than "delay[] distributions to creditors for a little longer"). Also, as shown above, the Patent Buyer has already assumed the risks of the Appeal by making the Patent Sale subject to the Additional Disney Rights, so the "bargain" is not materially affected by such a delay. Accordingly, the harm facing the Disney Entities far outweighs the minimal harm that Debtors and the Patent Buyer will face.

### D.    The Public Interest in Protecting Patent Rights Supports Granting the Stay

47.    A stay is justified under the fourth prong of *In re Genesis Health Ventures,* 367 B.R. at 519, as the issuance of a stay in this case will not negatively impact any significant public interest. The stay in fact is supported by the strong public policy in favor of correct application of the law. See Ams. United for Separation of Church & State v. City of Grand Rapids, 922 F.2d 303, 306 (6th Cir. 1990) (noting that "[t]he public interest lies in the correct application [of the law]"). Failure to grant the stay subjects the Disney Entities to the risk of materially harmful misapplication of controlling patent law. A stay also preserves the ability to redress harm through appellate review. See Charles & Lillian Brown's Hotel, 93 B.R. at 53 (recognizing the vital role stays pending appeal play in preserving parties' rights, including the "right to a review on the merits"); see also AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994) ("As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff"). Although public policy favors the expedient administration of the bankruptcy proceedings, expediency here is trumped by the risk that, if the Disney Entities are correct, the General CNTS Rights and the In Three Patent License may not be established against the Patent Buyer retroactively without a stay. A short delay is justified in light of the risk of the Disney Entities' loss of their rights.

## V.   NO BOND IS REQUIRED BECAUSE THE LIMITED STAY OF THE PATENT SALE ORDER HAS NO MATERIALLY ADVERSE FINANCIAL AFFECT

48.     Bankruptcy Rule 8005 allows the Court to condition a stay pending appeal on the filing of a bond.  The purpose of such a bond "is to protect the adverse party from potential losses resulting from the stay." In re United Merchs. & Mfrs., Inc., 138 B.R. 426, 430 (D. Del. 1992). The Court has "wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." Cont'l Oil Co. v. Frontier Ref. Co., 338 F.2d 780, 782 (10th Cir. 1964) (footnote citation omitted).

49.     Where, as here, the adverse party will not suffer any material losses as a result of a stay pending appeal, a bond is not necessary. United Merchs., 138 B.R. at 430; see also Zenith II, 258 F.3d at 191 (noting that a stay may be sought "with or without posting a bond"). Generally a bond is only necessary where the stay is "likely to cause harm by diminishing the value of an estate or endanger [the non-moving parties'] interest in the ultimate recovery . . . ." See, e.g., ACC Bondholder Group v. Adelphia Comme'n. Corp. (In re Adelphia Comme'n. Corp.), 361 B.R. 337, 368 (internal quotations omitted).  In this case, multiple parties submitted bids for the In Three Patents; a backup bid is in place; and the Patent Sale Order contemplates that the Patent Sale is subject to the appellate risk with respect to the Additional Disney Rights. There is no reason to believe that Debtors are at risk of losing value by reason of a stay pending appeal.

50.     By operation of Bankruptcy Rule 6004(h), Debtors and Patent Buyer were unable to close the Patent Sale before the end of 2012, which was the principal reason they stated for seeking a waiver of the temporary stay in the Patent Sale Order.  The requested stay pending appeal merely seeks to maintain the status quo and preserve the Disney Entities' rights for a relatively brief period (on the assumption that the Appeal can be expedited), thereby avoiding the risk of mootness.  As the Patent Sale Order expressly makes the sale subject to the Additional Disney Rights, neither Debtors nor the Patent Buyer have any basis to complain if the status quo is preserved to assure review on the merits, especially where the Disney Entities are willing to

allow the Patent Sale to close, provided that the closing does not moot the Appeal on the merits. Under the circumstances, a bond is not necessary. See In re Sphere Holding Corp., 162 B.R. 639, 644-45 (E.D.N.Y. 1994) (bond not required as a condition of stay pending appeal of dismissal of bankruptcy case when there was no evidence that the creditor's collateral was diminishing in value and little damage would occur); United Merchs., 138 B.R. at 430 (stay of further distributions pursuant to confirmed chapter 11 plan would not be conditioned upon a bond because the debtor would not suffer any loss as a result of the stay pending appeal).

## CONCLUSION

Based on the foregoing, the Disney Entities respectfully request that the Court enter an order (i) staying the effectiveness of the Patent Sale Order to the extent that it authorizes a sale free and clear of the General CNTS Rights, the In Three Patent Rights and the In Three Patent License, pending resolution of the Appeal; and (ii) granting such other and further relief as is equitable and proper.

Dated:   January 2, 2013

POTTER ANDERSON & CORROON LLP

/s/ Theresa V. Brown-Edwards
Theresa V. Brown-Edwards (DE Bar No.4225)
R. Stephen McNeill (DE Bar No. 5710)
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000

And

ARNOLD & PORTER LLP
Lisa Hill Fenning (California SBN 89238)
Harry E. Garner (California SBN 254942)
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: (213) 243-4000

**ATTORNEYS FOR THE DISNEY ENTITIES**