IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DDMG Estate, *et al.*,<br><br>        Debtors.[1] | Chapter 11<br><br>Bankr. Case No.: 12-12568 (BLS)<br><br>(Jointly Administered) |
| Walt Disney Studios Motion Picture Production, *et al.*,<br><br>        Appellant,<br><br>v.<br><br>DDMG Estate, *et al.*,<br><br>        Appellees. | Civil Action No. 13-00007 (SLR)<br><br><br><br>**Related Docket No. 1** |

**APPELLEE DEBTORS' MOTION TO STRIKE
THE DISNEY ENTITIES' MOTION FOR STAY PENDING APPEAL**

The debtors and debtors in possession in the above-captioned cases and the appellees in this appeal (collectively, the "Debtors") submit this motion to strike (the "Motion to Strike") the emergency motion for stay pending appeal (the "Stay Motion") filed by Walt Disney Studios Motion Picture Production and certain of its affiliates (the "Disney Entities"), and in support hereof respectfully state as follows:

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal or foreign taxpayer identification number, if any, are as follows: D2 Software, Inc. (5602); DDH Land Holdings, LLC; DDH Land Holdings II, LLC; DD Estate (8392); DDI Estate (6275); DDInt Estate (9344); DDMG Estate (9505); DDPI Estate (5757); DDPVC Estate (6450); DDSG Estate (4526); DDT Estate (6809); DDMI Estate (2113); Tradition Studios, Inc. (4883); Tembo Productions, Inc. (7634). The Debtors' mailing address is 10250 SW Village Parkway, Port St. Lucie, Florida 34987.

DOCS_NY:28882.2

**PRELIMINARY STATEMENT**

1.  Through this motion to strike, the Debtors submit that the Court must dismiss the Stay Motion on procedural grounds, without ever reaching the merits, because the Disney Entities violated Bankruptcy Rule 8005 by failing to first seek a stay pending appeal from the Bankruptcy Court after commencing the appeal. In the Stay Motion, the Disney Entities state that "the bankruptcy court previously denied the Disney Entities' oral motion for an extended stay." Stay Motion at ¶ 28. This is simply untrue.

2.  Contrary to the Disney Entities' assertion, Judge Shannon did not rule upon the Disney Entities' oral motion for a stay pending appeal at the Sale Hearing because it was premature. As stated by the Disney Entities at the hearing, the Disney Entities had not yet decided to commence an appeal. In order to provide the Disney Entities with a fair opportunity to make their decision in terms of filing an appeal and to seek a further stay if necessary, the Bankruptcy Court allowed a full fourteen-day stay to go into effect under Bankruptcy Rule 6004(h. The Disney Entities could not request a stay pending appeal through a motion or otherwise until the appeal was filed on December 28, 2012.

3.  In order to justify the filing of the Stay Motion in this Court rather than the Bankruptcy Court, the Disney Entities submit that the "requested relief could not be obtained on further written motion before the bankruptcy court prior to the [Sale Order] becoming effective." Stay Motion at ¶ 28. To support their theory that the Bankruptcy Court was unavailable to hear the Stay Motion, the Disney Entities erroneously speculate that "the bankruptcy judge manually crossed out any reference to the denial of the oral motion from the [Sale Order], apparently so that this Court could hear and determine a fully briefed motion for standing pending appeal due to his unavailability to hear such a motion before the temporary stay expires." *Id.* While Judge Shannon did indeed remove language from the Sale Order related to the Disney Entities' oral

motion for stay pending appeal made at the Sale Hearing, see Sale Order at ¶ 37, the Disney Entities' assumptions related to Judge Shannon's revisions are flawed. Judge Shannon did not overrule – let alone rule at all – on the Disney Entities' oral motion for stay pursuant to Bankruptcy Rule 8005. To the contrary, Judge Shannon clearly contemplated that a stay motion would be brought before him if and when the Disney Entities decided to commence an appeal and he confirmed his intention to carefully consider any such request:

> THE COURT: . . . The last thing, though, as a matter of courtesy to my friends across the street that I would want to do would be to create a full-blown emergency in the weeks over Christmas and New Year's. And I believe that that's what would happen. **Because if a decision [to appeal] is made, it would be presented to me for a stay. I don't know what I would do, but I would consider it. And it would likewise be presented -- if I were to deny it or if I weren't available to issue it, it would be presented across the street; again, in that context.**

See Exhibit I to Stay Motion, Transcript of Sale Hearing at p. 22 (emphasis added).

4. Yet, the Disney Entities opted to ignore Judge Shannon's procedural expectation as well as the requirements of Rule 8005 and did not file the Stay Motion in Bankruptcy Court or ask the Bankruptcy Court for a hearing. Instead, the Disney Entities waited until December 28, 2012, a full week following entry of the Sale Order, to file their appeal in this Court. Then, the Disney Entities waited another five days to file the Stay Motion - filing it after 7:30 p.m. (Eastern Time) on January 2, 2013, just two days prior to the expiration of the stay. Given the last minute filing of the Stay Motion, the Debtors filed this motion to strike so that the Court can immediately address the threshold procedural issue in light of the pressing timing of the sale closing. The Debtors reserve the right to respond to the merits of the Stay Motion at the appropriate time (and before the appropriate Court).

5. Based on the foregoing, the Disney Entities have failed to satisfy the threshold procedural requirement of Bankruptcy Rule 8005 and the Stay Motion. Accordingly, the Debtors respectfully request that the Court strike the Stay Motion.

## BACKGROUND

A. **General Background**

6. On September 11, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

7. The Debtors and their affiliates were leading providers of computer-generated imagery animation and digital visual effects for major motion picture movie studios and advertisers, and also operated, in partnership with Florida State University, an educational institute that offered programs in traditional motion picture arts and technical animation and special effects skills.

8. The factual background regarding the Debtors, including their historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Michael Katzenstein in Support of First Day Motions* [Bankruptcy Docket No. 3] filed on September 11, 2012.

9. The Debtors are presently in the process of finalizing the liquidation of their non-litigation assets. The Debtors have already sold their ongoing business operations and the bulk of their personal property. The Debtors have been reduced to a liquidating shell company and intend to wind-up their remaining affairs as quickly as possible.

B.     **Intellectual Property Sale Pleadings**

10.    On October 16, 2012, the Debtors filed the *Motion of the Debtors for an Order (A) Approving Procedures for Separate Sale of Assets; (B) Scheduling Auction and Hearing to Consider Approval of Sale and Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Approving Forms of Notice; and (D) Granting Related Relief* [Bankruptcy Docket No. 290] (the "Bid Procedures Motion").

11.    Concurrently therewith, the Debtors filed the *Motion of Debtors for Order (I) Approving Separate Sales of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Bankruptcy Docket No. 291] (the "Sale Motion").

12.    A hearing on the Bid Procedures Motion was held on November 6, 2012 and the Court entered the *Order (A) Approving Procedures for Separate Sale of Assets; (B) Scheduling Auction and Hearing to Consider Approval of Sale and Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Approving Forms of Notice; and (D) Granting Related Relief* [Bankruptcy Docket No. 480] (the "Bid Procedures Order") on November 8, 2012.

13.    Pursuant to the Sale Motion and the Bid Procedures Order, the Debtors requested authority to sell, among other things, certain intellectual property assets that they had previously acquired from a third party, In Three, Inc. ("In Three"), related to the conversion of two dimensional artwork to three dimensional artwork, including six patents and two patent applications (collectively, the "In Three Patents"). The In Three Patents were purchased from In Three by DD3D pursuant to an *Asset Purchase Agreement* (the "In Three APA") dated as of

November 22, 2010. DD3D subsequently changed its name to Digital Domain Stereo Group (n/k/a DDSG Estate), one of the Debtors herein.[2]

### C. The Disney Entities' Objections

14. The Disney Entities are a party to two agreements with In Three, executed in 2008 and 2009, respectively, for two dimensional and three dimensional conversion services relating to the production of two feature films (together, the "Works") produced by the Disney Entities entitled *G-Force* and *Alice in Wonderland*. In Three's services for the Works under these agreements (the "G-Force Agreement" and the "Alice in Wonderland Agreement," respectively) were completed prior to the Debtors' purchase of the In Three Patents in November 2010. It is undisputed that none of the Debtors assumed the obligations under the G-Force Agreement or the Alice in Wonderland Agreement as part of the purchase of the In Three Patents from In Three. Nonetheless, the Debtors did not contest the Disney Entities' continuing rights to use and exploit the In Three Patents with respect to the two specific Works that were the subject of the G-Force Agreement and the Alice in Wonderland Agreement.

15. The Disney Entities filed their *Limited Objection and Reservation of Rights of the Disney Entities to Debtors' Motion for Order (I) Approving Separate Sales of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Bankruptcy Docket No. 519] (the "Disney Objection"). The crux of the Disney Objection was that the Disney Entities have license rights in the In Three Patents that go beyond the two Works that were the subject of the G-Force Agreement and the Alice in Wonderland Agreement.

---

[2] DDSG Estate and DDMG Estate are collectively referred to herein as the "Sellers."

16. On November 29, 2012, the Debtors filed their *Reply to Limited Objections and Reservation of Rights of the Disney Entities to Debtors' Motion for Order (I) Approving Separate Sales of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Bankruptcy Docket No. 551].

17. At a hearing on December 4, 2012 to consider, among other things, the Disney Objection, the Bankruptcy Court authorized interested parties to submit supplemental briefs on the issue of the extent of the Disney Entities' license rights under the G-Force Agreement.

18. Accordingly, on December 6, 2012, the Disney Entities and the Debtors each filed their supplemental letter briefs [Bankruptcy Docket Nos. 648 and 649, respectively]. On December 7, 2012, the Debtors filed a brief letter [Bankruptcy Docket No. 652] addressing misstatements contained in the Disney Entities' supplemental letter brief. On December 9, 2012, the Disney Entities filed a further supplemental letter brief [Bankruptcy Docket No. 655] disputing the Debtors' assertion of misstatements.

19. On December 10, 2012, based on the extensive briefing outlined above and the arguments by the parties made at the December 4, 2012 hearing, the Bankruptcy Court entered a letter ruling [Bankruptcy Docket No. 658] (the "Disney Letter Ruling") overruling the Disney Objection. In the Disney Letter Ruling, the Bankruptcy Court painstakingly considered and overruled every objection raised by the Disney Entities to the Sale Motion and allowed the sale to go forward free and clear of the Disney Entities' asserted interests in the In Three Patents, except as to the particular Works covered by the G-Force Agreement and the Alice in Wonderland Agreement

20. On December 11, 2012, the Disney Entities requested reconsideration [Bankruptcy Docket No. 663] of the Disney Letter Ruling with respect to the ruling on Section 16(a) of the G-Force Agreement. On December 12, 2012, the Debtors filed a letter [Bankruptcy Docket No. 666] opposing the Disney Entities' request for reconsideration.

D.   **The In Three Patent Auction and Pending Sale**

21. Pursuant to the Bid Procedures Order, the Debtors conducted an auction on December 14, 2012 (the "Auction") for the sale of, among other things, the In Three Patents.

22. At the conclusion of the Auction, the Debtors selected RealD Inc. as the successful bidder (the "Successful Bidder") on the terms set forth in its successful bid (the "Successful Bid") and Acacia Research Group, LLC as the backup bidder (the "Backup Bidder") on the terms set forth in its final bid before dropping out of the auction (the "Backup Bid"). The successful bid provides for a purchase price of $5.45 million for the In Three Patents. The Successful Bidder has agreed to proceed with the closing of the sale on or before 12:00 a.m. (Eastern Time) on January 5, 2013, notwithstanding the pendency of this Appeal of the Sale Order. The Successful Bidder will step into the shoes of the Debtors for purposes of defending this Appeal from and after the closing, and the Debtors can proceed with finalizing their liquidation efforts. The Debtors will no longer be involved in what could be a lengthy and costly appeal.

23. A hearing on the Sale Motion was held on December 17, 2012 (the "Sale Hearing"), at which time the Bankruptcy Court approved the sale of certain of the In Three Patents and denied the Disney Entities' request for reconsideration of the Disney Letter Ruling. The Bankruptcy Court also clarified that the Disney Entities' limited rights in the two Works that were the subject of the G-Force Agreement and the Alice in Wonderland Agreement extended to third party vendors who performed services for the Disney Entities in connection with the

8

Works, but refused to broaden its ruling to include any asserted rights of Disney outside of the Works.

24.  At the conclusion of the Sale Hearing, the Bankruptcy Court denied the Debtors' request to waive the fourteen-day temporary stay under Bankruptcy Rule 6004(h). Although the Disney Entities orally requested a stay pending appeal at the Sale Hearing, the Bankruptcy Court did not address such request because the Disney Entities had not yet decided to file an appeal. Instead, the Bankruptcy Court declined to waive the fourteen-day stay and agreed to consider a motion for a stay pending appeal at a later date if the Disney Entities opted to file an appeal:

> I have no sense of whether or not Disney is going to take an appeal. That's a decision that they will make, and that's within their rights.
>
> The last thing, though, as a matter of courtesy to my friends across the street that I would want to do would be to create a full-blown emergency in the weeks over Christmas and New Year's. And I believe that that's what would happen. **Because if a decision [to appeal] is made, it would be presented to me for a stay. I don't know what I would do, but I would consider it. And it would likewise be presented -- if I were to deny it or if I weren't available to issue it, it would be presented across the street; again, in that context.**
>
> There are transactions that are presented to [the Bankruptcy Court] that require an immediate disposition and closing. But I believe the robust authority that we have that courts have recognized with respect to principles of equitable mootness require that I proceed carefully, in order to preserve parties' rights to have effective appellate review.
>
> So I'm not going to waive that fourteen – it's now fourteen days; it used to be ten. But I will not waive that period, and I will allow that process to play out.

*See* Exhibit I to Stay Motion, Transcript of Sale Hearing at p. 22 (emphasis added).

9

25. Later at the Sale Hearing, counsel for the Disney Entities acknowledged that no decision had yet been made in terms of an appeal: "Our client generally has not made a determination as to what -- what it will do with respect to appeal. But as soon as it has a definitive decision, there would be no benefit to anyone to delay that." *Id.* at p. 24, ll. 15-18.

26. On December 21, 2012, the Court entered the *Order (I) Approving Sale of In Three Patents and Related Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and (II) Granting Related Relief* [Bankruptcy Docket No. 721] (the "Sale Order"). The Sale Order has been stayed for a period of fourteen-days through January 4, 2013, by operation of Bankruptcy Rule 6004(h). The Bankruptcy Court crossed out of the Sale Order any reference to denial of any request for a stay for the simple reason that the Disney Entities had not yet decided to pursue an appeal.

27. The Disney Entities suggest that they were not required to go back to the Bankruptcy Court following entry of the Sale Order to request a stay due to Judge Shannon's vacation. *See* Stay Motion at ¶ 28. However, as addressed above, Judge Shannon clearly contemplated that a stay motion would be brought before him if and when the Disney Entities decided to commence an appeal and he said that he would carefully consider any such request. Yet, the Disney Entities did not even bother filing the Stay Motion in Bankruptcy Court or asking for a hearing. Instead, the Disney Entities waited until December 28, 2012, a full week following entry of the Sale Order, to file their notice of appeal. Then, the Disney Entities waited another five days to file the Stay Motion - filing it after 7:30 p.m. (Eastern Time) on January 2, 2013, just two days prior to the expiration of the stay.

## ARGUMENT

A. **The Disney Entities Stay Motion Should be Stricken Based on Their Failure to Seek a Stay in the Bankruptcy Court as Required by Bankruptcy Rule 8005**

28. Bankruptcy Rule 8005 provides that "[a] motion for a stay of [an order] of a bankruptcy judge . . . must ordinarily be presented to the bankruptcy judge in the first instance." Accordingly, Bankruptcy Rule 8005 requires the Disney Entities to present their request for a stay first to the Bankruptcy Court. Courts have held that the appellant's failure to seek a stay in the bankruptcy court precludes an appellate court from considering the merits of the request for a stay pending appeal and warrants denial of the motion. *See e.g., Zahn Farms v. Key Bank (In re Zahn Farms)*, 206 B.R. 643, 644 (B.A.P. 2d Cir. 1997) ("[the BAP] may not consider the merits of the request for a stay pending appeal [because the Debtors] have not complied with the duty imposed by [Bankruptcy Rule] 8005 to present the request for stay first to the bankruptcy judge from whose order the appeals is taken."); *In re Union Trust Philadelphia, LLC*, Case No. 11-141, 2011 WL 330797, at *3 (E.D. Pa. Aug. 2, 2011) (citing *In re O'Kelley*, Case No. 10-356, 2010 WL 3984666, at *3 (D. Haw. Oct. 8, 2010); *In re Fort Defiance Hous. Corp.*, Case No. 09-644, 2009 WL 3352303, at *1 (D. Ariz. Oct.16, 2009) (stating failure to comply with Bankruptcy Rule 8005 weighs heavily gainst granting stay and may be fatal to request)). Indeed, some courts have viewed the failure to present the stay motion to the bankruptcy court first as a jurisdictional defect. *See In re Taub*, 470 B.R. 273 (E.D.N.Y. 2012) (district court lacked jurisdiction to hear debtor's emergency motion for stay pending appeal, which had been filed directly with the district court without first seeking a stay from the bankruptcy judge); *see also In re 347 Linden LLC*, Case No. 11-1990, 2011 WL 2413526, at *4 (E.D.N.Y. June 8, 2011) (debtor's proper course is to file a motion to stay with the bankruptcy court in the first instance, rather than a district court). Further, a bankruptcy judge retains

jurisdiction over the issue of a stay even if a notice of appeal has been filed. *Ho v. Dai Hwa Elecs. (In re Ho)*, 265 B.R. 603 (B.A.P. 9th Cir. 2001).

29. Although the Disney Entities made an oral request for a stay to the Bankruptcy Court at the Sale Hearing, the Disney Entities had not yet decided to commence an appeal and the Bankruptcy Court did not rule upon the motion. Contrary to the Disney Entities' representation in the Stay Motion that "the Bankruptcy Court denied Disney's motion for an extended stay," the transcript (cited above) clearly reflects Judge Shannon's intention to carefully consider and rule upon any stay request if and when the Disney Entities filed an appeal and requested a stay. Rather than moving diligently with the filing of such an appeal and requesting a stay first in the Bankruptcy Court, the Disney Entities waited for one week to file their appeal and another five days (until just two days prior to expiration of the existing fourteen-day stay) to file the Stay Motion and did so without bothering to return to the Bankruptcy Court to request a stay in violation of Bankruptcy Rule 8005.

30. Furthermore, the Disney Entities provide no legitimate reason for their failure to request a stay from the Bankruptcy Court. According to the Disney Entities, the stay could not be obtained from the Bankruptcy Court because Judge Shannon is on vacation between December 21, 2012 and January 7, 2013. *See* Stay Motion at ¶ 28. The Disney Entities self-serving justification ignores both Bankruptcy Court procedure and Judge Shannon's availability during the period. The Bankruptcy Court has its own internal procedures to provide for coverage of cases when a Bankruptcy Judge is unavailable, and other Judges in the Bankruptcy Court would have been available to hear an emergency request for a stay had the Disney Entities sought one in a timely manner. *See In re Alexander*, 248 B.R. 478, 484 (S.D.N.Y. 2000) (denying motion for stay pending appeal made directly to district court based upon "projected

unavailability" of bankruptcy judge). Moreover, Judge Shannon continues to monitor these cases and respond to requests while on vacation. On the same date the Disney Entities filed the Stay Motion, Judge Shannon signed an order in these cases presented under certification by the Debtors.[3] It is reasonable to suspect that Judge Shannon would have similarly responded to a request by the Disney Entities to consider the Stay Motion.

31. To compound matters, the Disney Entities also failed to comply with the requirements of Bankruptcy Rule 8011(d) governing emergency motions. Bankruptcy Rule 8011(d) sets forth several requirements for emergency motions, including the requirement that the motion be "accompanied by an affidavit setting for the nature of the emergency." The Disney Entities have not filed any such affidavit, further justifying denial of their Stay Motion. *See In re Hall*, 2010 WL 2557334, *3 (D. Kan. June 24, 2010) (denying motion for stay pending appeal for failure to comply with procedural requirements of Bankruptcy Rule 8011(d)); *Zahn Farms*, 206 B.R. at 645 ("To further confound our ability to weigh the merits, the [movants] have ignored [Bankruptcy Rule] 8011(d), governing emergency motions such as this. It requires 'an affidavit setting forth the nature of the emergency' and other representations . . . . The [m]otion is denied because the [d]ebtors failed to comply with [Bankruptcy Rules] 8005 and 8011(d)). Under these circumstances, the Stay Motion should be dismissed because the Disney Entities failed to meet the procedural requirements for this Court to consider the Stay Motion.

### B. The Issuance of a Stay has the Potential to Substantially Injure the Debtors and Their Creditors

32. Unlike the Disney Entities, the Debtors will suffer immediate injury if the Sale Order is stayed. The Debtors and their other creditor constituencies do not have the luxury of awaiting the outcome of a lengthy appellate process. The outside closing date for the sale is

---

[3] *See Order (THIRD) Authorizing Debtors to Sell Assets to Successful Bidders at Auction Free and Clear of all Encumbrances*, Del Bankr. Case No. 12-12568 (BLS), Docket No. 747, signed by J. Shannon, Jan. 2, 2013.

DOCS_NY:28882.2

January 5, 2013. Neither the Successful Bidder nor the Backup Bidder is bound to purchase the assets after that date or during the pendency of the appeal. If a stay were granted, the Debtors would surely lose the pending sale of the In Three Patents to the Successful Bidder – a sale that is the result of a competitive auction and will yield $5.45 million in cash for the Debtors' estates.

33. A stay would also interfere with the Debtors' estates' ongoing liquidation efforts and the prospect of maximizing the value of the In Three Patents or otherwise winding-up the Debtors' estates in a prompt manner. As noted, if the stay is denied, this appeal will become the responsibility of the Successful Bidder. There is no reason to burden the Debtors' estates with this Appeal when the Successful Bidder is prepared to go forward with the closing of the sale, notwithstanding the pendency of this Appeal.

34. Taken together, issuance of a stay pending appeal would cause substantial injury to a great number of constituents in the Debtors' bankruptcy cases.

## **RESERVATION OF RIGHTS**

35. The Debtors are filing this motion to strike the Stay Motion in order to promptly bring certain threshold issues to the attention of this Court in a timely manner. The Debtors expect to file a substantive objection prior to the status conference hearing currently scheduled for Wednesday, January 9, 2013 at 11:00 a.m. (Eastern Time). Until such time, however, the Debtors file this motion to strike and reserve all of their rights to object to the Stay Motion

WHEREFORE, for the reasons stated above, the Debtors request that the Court strike the Disney Entities' Stay Motion and grant such further relief as the Court deems necessary.

Dated: January 4, 2013

PACHULSKI STANG ZIEHL & JONES LLP

_____
Debra I. Grassgreen (CA Bar No. 169978)
Robert J. Feinstein (NY Bar No. RF-2836)
Timothy P. Cairns (DE Bar No. 4228)
Maria A. Bove (NY Bar No. MB-8687)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: dgrassgreen@pszjlaw.com
 rfeinstein@pszjlaw.com
 tcairns@pszjlaw.com
 mbove@pszjlaw.com

Counsel to the Debtors and Debtors in Possession